STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 1049

JEFFREY REYNOLDS AND MICKY REYNOLDS

VERSUS

WALGREEN CO., WALGREEN LOUISIANA CO., ABC INSURANCE
COMPANY, XYZ INSURANCE COMPANY, AND JYL FESKE

**Judgment Rendered:** **JUN 0 2 2022**

* * * * * *

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Suit Number 2019-10828

Honorable William H. Burris, Presiding

* * * * * *

| | |
|---|---|
| Michelle L. Rees<br>Jennifer Bonneau<br>New Orleans, LA | Counsel for Plaintiffs/Appellants<br>Jeffrey Reynolds and Micky Reynolds |
| And | |
| Mark D. Kuss<br>Metairie, LA | |
| Kurt S. Blakenship<br>Ryan J. Roemershauser<br>Kelly M. Brian<br>Metairie, LA | Counsel for Defendants/Appellees<br>Walgreen Louisiana Co., Inc. and<br>Walgreen Company |
| Roy K. Burns<br>Covington, LA | Counsel for Defendant/Appellee<br>Jyl Feske |

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Holdridge J., concurs

**GUIDRY, J.**

Plaintiffs, Micky Reynolds and Jeffrey Reynolds, appeal from a trial court judgment granting an exception raising the objection of prescription and dismissing their claims against Walgreen Louisiana Company, Inc. (Walgreen) with prejudice. For the reasons that follow, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Micky Reynolds had a previous relationship with Kevin Quartrevingt, which resulted in the birth of a child, K.Q. Thereafter, Mrs. Reynolds married Jeffrey Reynolds and Mr. Quatrevingt became involved with Jyl Feske. At the time, Ms. Feske was employed by Walgreen as a pharmacy technician at the store located at 2800 Highway 190, Mandeville, Louisiana. On April 1, 2015, Mrs. Reynolds created her own individual account on walgreens.com. Mrs. Reynolds thereafter created an individual account for K.Q. on walgreens.com on June 11, 2015, and added K.Q.'s account to Mrs. Reynolds's family prescription account. The Reynolds regularly filled prescriptions at the Walgreen store located at 1901 Barataria Boulevard, Marrero, Louisiana.

Thereafter, Mrs. Reynolds and Mr. Quatrevingt became engaged in a bitter custody dispute over K.Q. During an August 2, 2016 custody hearing, Mrs. Reynolds told the court she had been blocked from accessing K.Q.'s Walgreen's accounts and that someone had changed her contact information on the account. Mrs. Reynolds recognized the phone number listed on the account as belonging to Ms. Feske. Mrs. Reynolds stated that she reported the issue to Walgreen and initiated a "HIPPA" complaint against Ms. Feske.

Mrs. Reynolds subsequently filed a motion for sole custody on October 21, 2016. In her motion, Mrs. Reynolds alleged, among other things, that she had filed a complaint with Walgreen because Ms. Feske, while working at Walgreen, went into K.Q. and Mrs. Reynolds's private and confidential prescription records and, in

2

the process of changing the phone number on the account, blocked Mrs. Reynolds from the account and illegally obtained confidential information regarding Mrs. Reynolds's second pregnancy with Mr. Reynolds. Mrs. Reynolds stated that she also reported the matter to "HIPPA." Thereafter, on October 31, 2016, Mrs. Reynolds filed a complaint with the Department of Health and Human Services, Office of Civil Rights (OCR) alleging Walgreen had violated federal standards for privacy and recounted the allegations from her motion for sole custody.

During a June 12, 2017 custody hearing, Mrs. Reynolds was questioned by Mr. Quatrevignt's counsel, whereupon Mrs. Reynolds was asked if Mr. Reynolds had taken a specific medication. At the hearing on June 16, 2017, Mr. Quatrevignt admitted that Ms. Feske accessed the Reynolds's records at Walgreen at his request and admitted that Ms. Feske told him she saw Mr. Reynolds's records in trying to find K.Q.'s records, and told him about the medication Mr. Reynolds was taking.

Thereafter, on August 14, 2017, Mrs. Reynolds began communicating with an investigator for Walgreen, Blake Orlando. Mrs. Reynolds received an email from Mr. Orlando on October 5, 2017, with contents of a report from Walgreen's IT Department detailing how family accounts at walgreen.com work and stating that while Ms. Feske would have been able to add K.Q. to her own family account and see her information, she would not have been able to access the information of Mrs. Reynolds, Mr. Reynolds, or their other children at walgreen.com. However, the report recognized that Ms. Feske, as an employee with access to Walgreen's pharmacy system, would have been able to view K.Q.'s information through that system. Mr. Orlando thereafter advised Mrs. Reynolds on February 23, 2018, that he had reviewed further information and would be drafting breach letters, would mail the letters to Mrs. Reynolds, and would report the HIPPA violations to OCR.

On April 13, 2018, Walgreen mailed the breach letters to the Reynolds. With regard to Mrs. Reynolds, Walgreen apologized for the inappropriate activity of its

3

pharmacy employee at the Mandeville store that may have occurred at various times between May 2014 and June 12, 2015. Walgreen noted this inappropriate activity may have included impermissibly accessing her pharmacy profile and reviewing her prescription records and further disclosing a potential medical condition based on a specific medication to a third party. With regard to Mr. Reynolds, Walgreen also apologized for the inappropriate activity of its pharmacy employee at the Mandeville store that may have occurred on June 12, 2015. Walgreen noted that this inappropriate activity may have included impermissibly accessing his pharmacy profile and reviewing his prescription records and further disclosing his name and medical condition to a third party.

Thereafter, on February 12, 2019, the Reynolds filed a petition for damages, naming Walgreen, Walgreen Co., their insurers, and Ms. Feske as defendants. The Reynolds alleged that Ms. Feske was employed as a pharmacy technician by Walgreen and pursuant to her employment, she had access to the Walgreen computer system. The Reynolds alleged that at various times between May 4, 2014 and June 12, 2015, Ms. Feske, acting in the course and scope of her employment with Walgreen, impermissibly accessed Mrs. Reynolds's pharmacy profile containing confidential, private patient information through Walgreen's computer system and in doing so, reviewed Mrs. Reynolds's prescription records for an unauthorized purpose and thereafter disclosed the contents of her profile, including a potential medical condition based on a specific medication, to third parties including Mr. Quatrevignt. Additionally, the Reynolds alleged that on June 15, 2015, Ms. Feske, acting in the course and scope of her employment with Walgreen, impermissibly accessed Mr. Reynolds's pharmacy profile containing confidential, private patient information through the computer system belonging to Walgreen and in doing so, reviewed Mr. Reynolds's prescription records for an unauthorized purpose and disclosed certain contents of that profile, including but not limited to Mr. Reynolds's

4

name and medication name, to third parties, including Mr. Quatrevingt. The Reynolds further alleged that Mr. Quatrevigt relayed the information he obtained to his attorney, who used the Reynolds's confidential, private patient information at trial in his custody case against Mrs. Reynolds. The Reynolds acknowledged that they filed complaints with OCR on June 13, 2017, reporting the incident involving Ms. Feske and reported the incident to Walgreens.

The Reynolds further asserted that *contra non valentum* applied to prevent the running of prescription because the cause of action was neither known nor reasonably knowable by them until Walgreen received additional supporting evidence to conclude their investigation and report their findings to OCR and the Reynolds on April 13, 2018.

Walgreen thereafter filed an exception raising the objection of prescription on July 20, 2020, asserting that the Reynolds had not filed suit within one year of the alleged negligence or discovery of that negligence by them. Walgreen asserted that the Reynolds had constructive knowledge at least by October 31, 2016, when Mrs. Reynolds filed her first OCR complaint based on actions of Ms. Feske and the Reynolds had actual knowledge on June 12 and June 16, 2017, when it was confirmed in open court that Ms. Feske had accessed their pharmacy profiles and obtained public health information from the Reynolds, which was thereafter shared with third parties. As such, Walgreen asserted that the Reynolds had enough information to excite attention for years before filing the petition for damages and were actively engaged in filing OCR complaints and therefore, could not rely on ignorance. Walgreen submitted copies of the transcript from the June 12 and 16, 2017 custody hearing in support of its exception.

In opposition to the exception, the Reynolds asserted that the earliest they had sufficient notice to pursue a claim against Walgreen was February 23, 2018, when Mr. Orlando advised that he would be drafting breach letters to mail to the Reynolds

5

and would be reporting HIPPA violations to OCR. The Reynolds asserted that before that time, they did not know Walgreen was at fault or that they were victims of a tort. Additionally, the Reynolds asserted that Walgreen prevented them from asserting their cause of action by engaging in conduct rising to the level of misrepresentation if not fraud on October 5, 2017 when Mr. Orlando emailed Mrs. Reynolds and reported Walgreen's IT findings. The Reynolds submitted copies of transcripts from the custody hearings as well as emails between Mrs. Reynolds and Mr. Orlando in connection with their opposition.

Following a hearing on the exception, the trial court signed a judgment on January 28, 2021, granting Walgreen's exception and dismissing the Reynolds's claims with prejudice. The Reynolds thereafter filed a motion for new trial on February 22, 2021. Following a hearing, the trial court signed a judgment denying the Reynolds's motion. The Reynolds now appeal from the trial court's January 28, 2021 judgment granting Walgreen's exception and dismissing their claims against it with prejudice.

## DISCUSSION

Delictual actions are subject to a liberative prescription of one year, which commences to run from the date the injury or damage is sustained. LSA-C.C. art. 3492. Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Damond v. Williams, 19-0686 (La. App. 1st Cir. 1/9/20), 295 So. 3d 415, 418, writ not considered, 20-00821 (La. 10/14/20), 302 So. 3d 1126. In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court's ultimate consideration is the reasonableness of the

6

plaintiff's action or inaction in light of the surrounding circumstances, including his education, intelligence, and the nature of the defendant's conduct. A plaintiff is deemed to know what he can learn through the exercise of reasonable diligence and cannot rely on ignorance attributable to his own willfulness or neglect. Lexington Land Development, L.L.C. v. Chevron Pipeline Company, 20-0622, p. 14 (La. App. 1st Cir. 5/25/21), 327 So. 3d 8, 19, writ denied, 21-01194 (La. 11/17/21), 327 So. 3d 996.

The objection of prescription may be raised by a peremptory exception. La. C.C. art. 927(A)(1). Ordinarily, a party urging an exception raising the objection of prescription bears the burden of proving that the prescriptive period has elapsed. However, if the petition shows that it is prescribed on its face, then the burden shifts to the plaintiff to prove that the prescriptive period has not elapsed. See Templet v. State, through Department of Public Safety and Corrections, 19-0037, p. 4 (La. App. 1st Cir. 11/15/19), 290 So. 3d 187, 191. When evidence is introduced at the hearing on the peremptory exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard of review. Stevens v. St. Tammany Parish Government, 19-1555, p. 12 (La. App. 1st Cir. 4/8/21), 322 So. 3d 1268, 1279-80, writ denied, 21-00800 (La. 11/3/21), 326 So. 3d 898.

In the instant case, the Reynolds's petition alleges that Ms. Feske, while an employee of Walgreen, impermissibly accessed Mrs. Reynolds's Walgreen pharmacy account between May 4, 2014 and June 12, 2015 and Mr. Reynolds's account on June 15, 2015. Because the petition against Walgreen and Ms. Feske was not filed until February 12, 2019, it is clearly prescribed on its face. The Reynolds, however, assert that their action is not prescribed because *contra non valentem* applied to suspend the running of prescription.

The doctrine of *contra non valentem* provides that prescription does not run against one who is ignorant of the facts upon which his or her cause of action is

7

based, and it is an exception to the statutory prescriptive period where, in fact and for good cause, a plaintiff is unable to exercise his cause of action when it accrues. Stevens, 19-1555 at p. 14, 322 So. 3d at 1280-81. Four categories of *contra non valentem* have been recognized as applying to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. Carter v. Haygood, 04-0646, pp. 11-12 (La. 1/19/05), 892 So. 2d 1261, 1268. The doctrine of *contra non valentem*, however, only applies in exceptional circumstances. La. C.C. art. 3467, Official Revision Comment (d); Renfroe v. State, Department of Transportation and Development, 01-1646, p. 9 (La. 2/26/02), 809 So. 2d 947, 953.

The Reynolds assert that the third and fourth categories of *contra non valentem* apply in the instant case. The third category of *contra non valentem* applies when the plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant or because of his failure to perform some legal duty whereby the plaintiff has been kept in ignorance of his rights. Carter, 04-0646 at p. 12, 892 So. 2d at 1269. Thus, the third category of *contra non valentem* applies when the defendant engages in conduct that prevents the plaintiff from availing himself of his judicial remedies. Carter, 04-0646 at p. 12, 892 So. 2d at 1269.

The Reynolds assert that the actions of Walgreen, particularly the action of the Walgreen investigator, Mr. Orlando, mislead them into believing that Ms. Feske had not had access to their private health information. The October 5, 2017, email

from Mr. Orlando relied on by the Reynolds, however, is specifically addressed to the limited issue of whether Ms. Feske could have accessed their pharmacy accounts through K.Q.'s account via walgreens.com. Mr. Orlando clearly stated that Ms. Feske "would not have gained access, and has not had access, to [Mr. Reynolds, Mrs. Reynolds or their children's] prescription information *via Walgreens.com.*" (Emphasis added.) Furthermore, Mr. Orlando clearly stated that Ms. Feske, as an employee at Walgreen, had access to the Walgreen pharmacy system and would have been able to access pharmacy information through that system. As such, we find no error in the trial court's determination that the Reynolds failed to establish that Walgreen concealed any negligent conduct or mislead the Reynolds such that the Reynolds were prevented from filing an action against Walgreen.

The fourth category of *contra non valentem*, often referred to as the "discovery rule," applies to prevent the running of prescription where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. See Marin v. Exxon Mobil Corp., 09-2368, p. 12 (La. 10/19/10), 48 So. 3d 234, 245. The Reynolds argued, in opposition to the exception, that they did not have sufficient knowledge to pursue a tort claim against Walgreen until February 23, 2018, when Mr. Orlando advised them that he would be drafting breach letters. On appeal, the Reynolds assert that they did not suspect tortious activity by Ms. Feske until, at the earliest, June 12, 2017, when it was discovered that Ms. Feske had also accessed Mr. Reynolds's pharmacy account and revealed to Mr. Quatrevingt a certain prescription medication that Mr. Reynolds had taken. However, according to Mrs. Reynolds's October 21, 2016 motion for sole custody, Mrs. Reynolds had sufficient knowledge to allege that Ms. Feske, an employee of Walgreen, had "illegally obtained" her confidential health information. This knowledge was also sufficient for Mrs. Reynolds to file a complaint with OCR alleging Walgreen had violated federal standards for privacy. Accordingly, at this

9

time, Mrs. Reynolds had knowledge of facts indicating to a reasonable person that she was the victim of a tort and that Walgreen was implicated as a defendant.

However, as to Mr. Reynolds, we find the record indicates that he did not become aware that his personal health information had been accessed until June 12, 2017, when Mrs. Reynolds was asked by counsel for Mr. Quatrevignt if Mr. Reynolds had taken a specific medication.[1] There has been much discussion in brief about Walgreen's accounts being "linked," but there is no evidence in the record that any account information was shared except between Mrs. Reynolds and K.Q. In fact, the documentary evidence and testimony from the June 2017 custody hearing indicate that Mrs. Reynolds had been informed by Walgreens and told counsel for Mr. Quatrevignt that Mr. Reynolds's Walgreen's account was not linked to hers. Accordingly, while he may have been aware prior to this time that Mrs. Reynolds's information may have been obtained, whether by access to her account or through K.Q.'s account, there is no evidence that he had sufficient knowledge prior to June 12, 2017, that his account information had been obtained or that he was the victim of a tort. Therefore, we find that the trial court erred in finding that *contra non valentem* did not apply to interrupt prescription as to his claims for damages related to the alleged improper access of his Walgreen pharmacy profile and disclosure of the contents of his pharmacy profile.

However, finding that *contra non valentem* applies as to the claims asserted by Mr. Reynolds does not end the prescription inquiry. Even if prescription did not begin to run against the claims asserted by Mr. Reynolds until June 12, 2017, those claims are still appear to be prescribed, having been filed more than a year later. The Reynolds, however, assert that the breach letters sent by Walgreen constitute an acknowledgment that interrupted prescription. Louisiana Civil Code article 3464

---

[1] Mr. Reynolds was not present, but he was informed by Mrs. Reynold's attorney on that date that his health information had been revealed in court.

10

provides that "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." Acknowledgment interrupts prescription before it has expired, with the prescriptive period beginning to run anew from the time of the interruption. Bracken v. Payne and Keller Co., Inc., 06-0865, p. 7 (La. App. 1st Cir. 9/5/07), 970 So. 2d 582, 588. Acknowledgment involves an admission of liability, either through explicit recognition of a debt owed or through actions of the debtor that constitute a tacit acknowledgment. Acknowledgment may be made verbally, in writing, by partial payment of interest or by pledge, or in other ways, or it may be implicit or inferred from the facts and circumstances. Gary v. Camden Fire Insurance Co., 96-0055, pp. 4-5 (La. 7/2/96), 676 So. 2d 553, 556. A tacit acknowledgment arises from a debtor's acts of reparation or indemnity, unconditional offers or payments, or actions which lead the creditor to believe that the debtor will not contest liability. Gary, 96-0055 at p. 5, 676 So. 2d at 556. If the acknowledgement is tacit, it is necessary to ascertain that the alleged facts imply a definite admission of liability. Safeco Insurance Co. v. Norcold, Inc., 12-0755, p. 4 (La. App. 1st Cir. 2/25/13), 113 So. 3d 1104, 1107. With respect to delictual actions, the acknowledgment need not be of a certain amount of damages, only of the defendant's responsibility and the plaintiff's right against that defendant. Huger v. Sewerage and Water Board of New Orleans, 95-2261, p. 4 (La. App 4th Cir. 3/27/96), 672 So. 2d 1053, 1055, writ denied, 96-1034 (La. 5/31/96), 674 So. 2d 264.

The trial court found that the April 13, 2018 breach letters sent by Walgreen to the Reynolds, apologizing for the inappropriate activity of its pharmacy employee occurring on June 12, 2015, and noting that the inappropriate activity may have included accessing Mr. Reynolds's pharmacy profile, reviewing his prescription records, and disclosing his name and medical condition to a third party, were an acknowledgment of liability. From our review of the record, we find no error in the

11

trial court's finding. In these letters, Walgreen admits responsibility of its employee and states it is reviewing any additional action that can be taken as a result of the matter. See Huger, 95-2261 at pp. 5-6, 672 So. 2d at 1055-56.

Furthermore, because the application of *contra non valentem* to the claims of Mr. Reynolds suspended the commencement of the running of prescription until June 12, 2017, and the April 13, 2018 letter to Mr. Reynolds constitutes an acknowledgment that interrupts prescription, we find that any claim asserted by Mr. Reynolds against Walgreen for damages related to the alleged improper access of his Walgreen pharmacy profile and the disclosure of the contents of his pharmacy profile is not prescribed.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court to the extent that it sustained the exception raising the objection of prescription as to the claims asserted by Mrs. Reynolds. However, we reverse the judgment of the trial court to the extent that it sustained the exception raising the objection of prescription and dismissed the claims asserted by Mr. Reynolds related to the alleged improper access of his Walgreen pharmacy profile and the disclosure of the contents of his pharmacy profile. All costs of this appeal are assessed to Walgreen Louisiana Company, Inc.

**AFFIRMED IN PART; REVERSED IN PART.**